United States District Court
Southern District of Texas
**ENTERED**

January 16, 2018

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| AMADOR PEREZ-PATINO, | § | |
| | § | |
| Petitioner, | § | |
| | § | CIVIL ACTION NO. 7:16-CV-634 |
| VS. | § | |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION

Petitioner Amador Perez-Patino, a state prisoner proceeding pro se, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) In 2012, Petitioner was convicted for possession of over 2,000 pounds of marijuana and sentenced to six years confinement in the Institutional Division of the Texas Department of Criminal Justice (TDCJ). In seeking federal habeas relief, Petitioner does not challenge his conviction or sentence, but rather his claims address two decisions by the Texas Board of Pardons and Paroles (Board) in 2013 and 2014 to deny his release on parole and two decisions in 2014 and 2015 to deny his release to discretionary mandatory supervision (DMS). Petitioner challenges the Board's decisions on five grounds, including claims that the Board violated his right to Equal Protection and that the decisions were impermissibly vague.

Pending before the District Court is Respondent's Motion for Summary Judgment. (Docket No. 3.) Respondent argues that the petition should be dismissed because Petitioner's claims are all time barred, unexhausted, or meritless. (*Id.* at 4.) Petitioner filed a general objection to Respondent's motion for summary judgment. (Docket No. 5.)

After carefully considering the pleadings in this case, the state court record, and the applicable law, the undersigned concludes that the § 2254 petition should be denied. Petitioner's claims are barred by limitations with the exception of those challenging the Board's 2015 decision to deny his release to DMS. Three of his claims challenging that decision are unexhausted, as he raises them for the first time in his federal habeas petition. Petitioner's two remaining claims, challenging the Board's 2015 decision on Equal Protection and vagueness grounds, should be dismissed as meritless. Accordingly, for the reasons discussed further below, it is recommended that Respondent's motion for summary judgment be granted and that this action be dismissed.

## I.  BACKGROUND

In June 2012, a grand jury in Hidalgo County, Texas, returned an indictment charging Petitioner with possession of marijuana in an amount more than 2,000 pounds. (Docket No. 4-7, at 12.) On December 7, 2012, Petitioner pleaded guilty to that charge and was sentenced to six (6) years' confinement. (*Id*. at 59.) The Texas Board of Pardons and Paroles (Board) has twice denied Petitioner release on parole and twice denied his release on DMS. Those decisions were made on the following dates:

- Denied parole on March 7, 2013;

- Denied parole on April 15, 2014;

- Denied release to DMS on November 18, 2014; and

- Denied release to DMS on September 4, 2015.

(Docket No. 4-8, at 25.) The Board's reasons for denying Petitioner parole and release on DMS varied, but included the following (among other things): 1) Petitioner's record indicates a "predisposition to commit criminal acts when released"; 2) Petitioner's "record indicates

2

excessive drug or alcohol involvement"; and 3) Petitioner's record includes "illegal reentry after deportation." (Docket No. 4-8, at 30, 33, 36, 39.)

On March 4, 2016, Petitioner filed a state application for writ of habeas corpus.[1] (Docket No. 4-3, 22.) Petitioner challenged the Board's denials of parole and release to DMS on two grounds: 1) the Board's denials are a violation of the Fourteenth Amendment because they are "arbitrary toward Mexican Nationals"; and 2) the Board's "listed reasons for denying parole is vague and ambiguous." (*Id.* at 11, 13.) On June 6, 2016, the presiding state district court judge entered recommended findings of fact and conclusions of law. Based on those recommendations, the Texas Court of Criminal Appeals denied Petitioner's state habeas application "without written order on findings of trial court without hearing," on August 10, 2016.[2] (Docket No. 4-5, at 1.)

On October 7, 2016, Petitioner filed the instant federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the Board's decisions to deny him parole and release to DMS.[3] (Docket No. 1.) Petitioner asserts five claims in his federal petition. His first two claims are very similar to those that he included in his state writ, namely: 1) the Board's denials are a violation of the Fourteenth Amendment because they are "discriminating against Mexican Nationals"; and 2) the Board's "written decisions to deny [him] parole . . . are ambiguous [and]

---

[1] Petitioner signed his state writ on March 4, 2016, which is the earliest possible date that it could be considered filed.

[2] During the time Petitioner's state writ was pending, he also filed a writ of mandamus alleging that the state court "failed to respond and/or answer [his] habeas petition . . . within a timely manner." (Docket No. 4-3, at 1-4.) Petitioner's writ of mandamus was pending from April 25, 2016, until August 10, 2016, when the Texas Court of Criminal Appeals denied Petitioner's writ "without written order." (Docket No. 4-1, at 1; Docket No. 4-3, at 4.) Petitioner's writ of mandamus was denied on the same day as his state habeas writ.

[3] This is the date that Petitioner signed his federal habeas petition, which is the earliest possible date that it could be considered filed. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) ("[A] habeas corpus petition should be deemed filed when the petition is handed over to prison authorities for mailing.").

vague." (*Id.* at 4.)  Petitioner's final three claims were not asserted in his state writ, specifically: 3) "Board fails to provide Petitioner (Mexican National) trained advocate representation during parole eligibility reviews and/or proceedings"; 4) "Board fails to notify the Mexican Consulate when it denies paroles, repeatedly"; and 5) "Board treats Mexican Nationals discriminately when denying them the option to participate at Intermitted Sanction Facilities (ISF); when accused of technical parole violations." (*Id.*)

Respondent has moved for summary judgment as to all of Petitioner's claims.  (Docket No. 3.)  Petitioner filed a general objection to Respondent's motion for summary judgment; however, he did not specifically address any of the arguments raised in Respondent's motion. (Docket No. 5.)

## II.  ANALYSIS

### A.      Is the Federal Petition Timely?

Respondent contends that Petitioner's challenges to the Boards decisions denying him parole and release to DMS are all time barred, with the exception of his challenge to the Board's 2015 denial of release to DMS.  (Docket No. 3, at 8-12.)  Respondent is correct.

Petitions for habeas corpus relief filed in federal court after April 24, 1996, are subject to review under the amendments to the federal habeas corpus statutes as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA established a one-year period for filing habeas corpus petitions by persons in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).[4]  In most cases, the one-year period of limitation runs from the "date on which the

---

[4]  The full text of the AEDPA limitations provision reads as follows:

judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A).  Here, however, because Petitioner attempts to challenge decisions that the Board made, rather than his conviction or sentence, the one-year period of limitation runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See id.* § 2244(d)(1)(D).

Stated another way, there is a one-year limitations period for challenging the Board's decisions, which runs from the date that Petitioner received notice of each adverse decision.  The relevant dates are as follows:

| Relevant Proceeding | Date Notice Received | Date Limitations Expired |
|---|---|---|
| Denied Parole | March 7, 2013 | March 7, 2014 |

---

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C.A. § 2244(d).

| Denied Parole | April 15, 2014 | April 14, 2015 |
| Denied DMS | November 18, 2014 | November 18, 2015 |
| Denied DMS | September 4, 2015 | September 5, 2016 |

(Docket No. 4-8, at 25, 30, 33, 36, 39.)  Petitioner did not file his federal habeas petition until October 7, 2016.  Absent some form of tolling, Petitioner's challenges to the Board's adverse decisions were filed too late.  Although Petitioner does not contend that the limitations period was tolled, in light of his pro se status, the possibility of tolling will be considered.

The facts here suggest one possible basis for statutory tolling.  Section 2244(d)(2) provides that the one-year limitations period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review . . . is pending."  28 U.S.C. § 2244(d)(2).  As such, Petitioner's post-conviction application and other relevant collateral filings will be evaluated to determine if they tolled the limitations period.

Petitioner filed two state collateral proceedings, which were pending during the following periods:

1)    State habeas application:        March 4, 2016, to August 10, 2016 (160 days)

2)    Writ of Mandamus:               April 25, 2016, to August 10, 2016 (108 days)

Under these circumstances, Petitioner's state habeas application and writ of mandamus could not have tolled the limitations period for his challenges to his 2013 and 2014 parole denials, or his 2014 denial to DMS.  Petitioner did not file those documents until 2016, which was well after the limitations period had run.  Petitioner's state filings cannot toll the one-year limitations period as it relates to the Board's adverse decisions from 2013 and 2014 because it had already expired before those proceedings began.  *Scott v. Johnson*, 227 F.3d 260, 263 (5th

6

Cir. 2000) (holding that the "state habeas application did not toll the limitation period under §

2244(d)(2) because it was not filed until after the period of limitation had expired").

In any event, Petitioner's two state collateral proceedings were only pending a total of

160 days.[5]   Even if tolling applied to those proceedings (which it does not), Petitioner's

challenges to his 2013 and 2014 parole and DMS denials would still be untimely.  Accordingly,

Petitioner's claims attacking those decisions by the Board are barred by the one-year AEDPA

limitations provision.  The only challenge to the Board's adverse decisions that is not barred by

limitations is Petitioner's challenge to the 2015 denial of release to DMS.

**B.      Exhaustion and Procedural Bar**

Respondent argues that three of Petitioner's claims asserted in his § 2254 federal petition

(Petitioner's "Claims 3, 4, and 5") should be dismissed because he has failed to exhaust his state

remedies as required by 28 U.S.C. §§ 2254(b), (c).[6]   (Docket No. 3, at 12-15.)  Here again,

Respondent is correct.

Section 2254(b)(1)(A) provides that an application for writ of habeas corpus "shall not be

granted unless it appears that ... the applicant has exhausted the remedies available in the courts

of the State."  Section 2254(c) further explains:

---

[5] Because Petitioner's writ of mandamus was pending during the same time that his state habeas application was pending, the relevant time period that his state filings could potentially extend the limitations period is only 160 days, rather than 268 days (160 days plus 108 days).  But even if Petitioner could have received 268 days tolling credit (which he cannot), his federal petition would still have been untimely.  As to Petitioner's challenge to the Board's 2014 denial of release to DMS, adding the 268 days would result in the AEDPA one-year limitations period expiring on August 12, 2016, which is still prior to the date that Petitioner filed his federal petition.
[6] Specifically, the three claims at issue here are the following: 1) "Board fails to provide Petitioner (Mexican National) trained advocate representation during parole eligibility reviews and/or proceedings"; 2) "Board fails to notify the Mexican Consulate when it denies paroles, repeatedly"; and 3) "Board treats Mexican Nationals discriminatively when denying them the option to participate at Intermitted Sanction Facilities (ISF); when accused of technical parole violations."  (Docket No. 1, at 4.)

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(c).

As the Supreme Court has noted, this exhaustion requirement gives "the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). Under § 2254(b), a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). Stated another way, "[j]ust as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman*, 501 U.S. at 732.

Here, there can be no dispute that Petitioner failed to raise his final three claims (claims 3, 4, and 5) in his state writ attacking the Board's adverse decisions. Petitioner offers no explanation as to why he failed to raise those claims at the state level. To be sure, there are exceptions to the exhaustion requirement. For example, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. However, here again, Petitioner offers no argument or information regarding the cause for his default, nor does he

explain how the failure to consider his defaulted claims will result in a "fundamental miscarriage of justice." *Id.*

Furthermore, should Petitioner raise these three claims at the state level they would be dismissed as procedurally barred under the Texas abuse of the writ doctrine. *See Ex parte Whiteside*, 12 S.W.3d 819 821 (Tex. Crim. App. 2000). As a result, Petitioner is not entitled to federal habeas corpus review as to those claims. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) ("this court is barred from reviewing the merits" of the petitioner's claim because it would be procedurally barred if asserted at the state level).

**C.      2015 Denial of Release to DMS**

Petitioner's two remaining claims challenge the Board's 2015 denial of his release to DMS. Petitioner alleges the following: 1) the Board "violates [his] Equal Protection rights under the 14th Amendment by discriminating against Mexican Nationals within the parole process and decisions to deny paroles [are] not based on any rational basis"; and 2) the "Board's written decisions to deny the Petitioner parole more than 4 to 5 times for a non-violent crime are ambiguous, vague and do not constitute a factual record about Petitioner." (Docket No. 1, at 4.) Respondent argues that both of Petitioner's claims are meritless and should be rejected. (Docket No. 3, at 15-23.)

1.      AEDPA Standard of Review

Federal law authorizes a court to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas proceedings must honor the "presumption of finality and legality [that] attaches to [a petitioner's] conviction and sentence." *Barefoot v. Estelle*, 463 U.S. 880,

887 (1983), *overruled in part on other grounds*, *Lindh v. Murphy*, 521 U.S. 320 (1997).  Since 1996, federal courts have given effect to the traditional limits on habeas review through the deferential standard mandated by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "embodies the principles of federalism, comity, and finality of judgments." *Evans v. Cockrell*, 285 F.3d 370, 374 (5th Cir. 2002).  The AEDPA "substantially restricts the scope of federal review of state criminal court proceedings."  *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  "[Section] 2254(d)'s 'highly deferential standard for evaluating state-court rulings' . . . demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

Under the AEDPA, a federal court cannot grant habeas relief on issues adjudicated on the merits in state court unless (1) the legal determinations or mixed legal and factual adjudications are contrary to, or an unreasonable application of, clearly established federal law; or (2) the state factual decisions are unreasonable in light of the evidence.  28 U.S.C. § 2254(d)(1) & (2); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000).

The Supreme Court has explained that a state court decision is "contrary to" federal law when that court arrives at a conclusion "opposite to that reached by [the Supreme Court] on a question of law" or "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413; *see also Bell v. Cone*, 535 U.S. 685, 698 (2002); *Early v. Packer*, 537 U.S. 3, 7–8 (2002).  A state court unreasonably applies federal law when it "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the particular facts of the particular state prisoner's case," or when "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a

new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

The AEDPA also controls federal review of factual issues raised by a habeas petitioner. A federal habeas court must presume the underlying factual determinations of the state court to be correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006).

The Fifth Circuit has also made it clear that a "federal habeas court is authorized by section 2254(d) to review only a state court's decision and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez*, 274 F.3d at 948 n.11; *see also Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004) ("As a federal habeas court, we are bound by the state habeas court's factual findings, both implicit and explicit.").

In discussing the highly deferential standard of review under § 2254(d), the Supreme Court explained:

> If this standard is difficult to meet, ***that is because it was meant to be***. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (emphasis added) (internal citations omitted).

In the present case, the state district court judge entered findings of fact and conclusions of law recommending denial of Petitioner's habeas application. The Court of Criminal Appeals

denied habeas relief "without written order on findings of trial court."  In reviewing Petitioner's federal habeas claims, the AEDPA requires that the state habeas court's findings of fact and conclusions of law be accorded the deference described above.[7]

     2.    Equal Protection Claim

Petitioner alleges that the Board violated his right to Equal Protection by discriminating against Mexican Nationals and denying him release without "any rational basis."  (Docket No. 1, at 4.)  According to Petitioner, the Board denied him release to DMS because he is "from Mexico."  (*Id.* at 6.)

The Fifth Circuit has described the proper analysis of Equal Protection claims:

> "The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must co-exist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996) (citations omitted).  Thus, "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."  *Dandridge v. Williams*, 397 U.S. 471, 485 (1970).  Rather, as long as they do not burden a fundamental right or target a suspect class, "state agencies may pursue legitimate purposes by any means having a conceivable rational relationship to those purposes." *Stern v. Tarrant County Hosp. Dist.*, 778 F.2d 1052, 1054 (5th Cir. 1985) (en banc).

> Even the deferential "rational basis" scrutiny which is applied to ordinary governmental classifications is not appropriate, however, when the challenged law does not create any classifications at all.  As we have previously stated, "if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action——even if irrational——does not deny them equal protection of the laws."  *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (citation omitted).  Thus, when we are confronted with a state action which does not so classify or distinguish, we need not consider whether there is a "rational basis" for that action because such state actions are not subject to Equal Protection scrutiny.  *Vera v. Tue*, 73 F.3d 604, 609–610 (5th Cir. 1996) (citing *Brennan*, 834 F.2d at 1257).

---

[7]  For simplicity, the Court of Criminal Appeals, which adopted the findings of the state district court judge, will be referred to as the "state habeas court."

*Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997).  Even where state actors have created a classification between two or more relevant groups, the "Supreme Court has instructed us time and again … that disparate impact alone cannot suffice to state an Equal Protection violation." *Id*. (citing *Washington v. Davis*, 426 U.S. 229, 246-250 (1987)).  "Thus, a party who wishes to make out an Equal Protection claim must prove 'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury.  *Id*. (citations omitted).

    Here, the state habeas court ruled against Petitioner on his Equal Protection claim.  In doing so, the court noted that "the parole board reviewed [Petitioner] for possible release to discretionary mandatory supervision [but] denied [him] release for four [specific] reasons." (Docket No. 4-8, at 98.)  The state habeas court found that "[i]n their discretion, the parole board properly denied [Petitioner] release pursuant to TEX. GOV'T CODE § 508.149(b)," and that Petitioner "has failed to allege and prove facts which, if true, entitle him to relief."  (*Id.*) Petitioner has failed to show that his determination was contrary to, or an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).  Nor has Petitioner overcome the presumption of correctness that applies to the state court's factual findings on this issue.  *See* 28 U.S.C. § 2254(d)(2), (e)(1).

    There is nothing in the record to support Petitioner's claim that he was denied release to DMS solely because he is "from Mexico."   As the state habeas court pointed out, three of the reasons given by the Board in denying DMS are as follows: 1) "the record indicates excessive drug or alcohol involvement which includes possession, use or delivery in the instant offense or criminal history"; 2) "the record indicates that the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation"; and 3) "the record indicates that the inmate's release would endanger the public."  (Docket No. 4-8, at 39.)  Petitioner's apparent

allegation that the Board's decision was motivated by purposeful discrimination is unsupported by the record and wholly conclusory.  Such a conclusory claim does not provide a basis for federal habeas relief.  *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("[a]bsent evidence in the record, a court cannot consider a habeas peitioner's bald assertions on a critical issue in his pro se petition"); *see also United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) ("conclusory allegations on a critical issue are insufficient to raise a constitutional issue").

Because Petitioner has failed to show that the state habeas court unreasonably applied federal law in denying his Equal Protection claim, and because he has not overcome the presumption that the court's factual findings are correct, Petitioner is not entitled to federal habeas relief on this issue.

      3.    <u>Vagueness/Due Process Claim</u>

Petitioner alleges that the "Board's written decisions to deny the Petitioner parole more than 4 to 5 times for a non-violent crime are ambiguous, vague and do not constitute a factual record about Petitioner."  (Docket No. 1, at 4.)  Liberally construed, Petitioner may be contending that the Board violated his right to Due Process by failing to give sufficient reasons for denying his release to DMS.

A federal court may not grant habeas relief "unless the petitioner alleges that he 'has been deprived of some right secured to him by the United States Constitution or the laws of the United States." *Teague v. Quarterman*, 482 F.3d 769, 773 (5th Cir. 2007) (quoting *Hillard v. Bd. Of Pardons & Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985).  Before turning to the merits of Petitioner's Due Process claim, we must first ask whether Petitioner had a constitutionally protected expectancy in being released to DMS.  Respondent seems to suggest that he did not. Respondent argues that "a constitutional expectancy of early release exists only in the mandatory

supervision scheme in place in Texas for crimes committed before September 1, 1996.  (Docket No. 3 at 16 (citations omitted.)  "Because an inmate's early release is discretionary, [Petitioner] Perez-Patino's underlying claim that he is entitled to release to DMS must be rejected."  (*Id*. at 17.)  To the extent that Respondent contends that Petitioner had no constitutional expectancy of release to DMS, she is mistaken.

"Eligibility for mandatory supervision is governed by the 'law in effect at the time the holding offense was committed.' "  *Kirsch v. Quarterman*, Civ. A. No. H-07-524, 2008 WL 3003919, at *4 (S.D. Tex. Aug. 1, 2008) (quoting *Ex parte Thompson*, 173 S.W.3d 458, 458 (Tex. Crim. App. 2005)).  Because Petitioner committed his holding offense in June 2012, he falls under the supervision scheme that became effective September 1, 1996.  TEX. GOV'T CODE § 508.147.  The Fifth Circuit has described the post-September 1, 1996 scheme as follows:

> Under this post-September 1, 1996 scheme, section 508.147(a) of the Texas Government Code, like its predecessor statute, mandates that "a parole panel *shall* order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time served plus any accrued good conduct time equals the term to which the inmate was sentenced." A difference resulted, however, from the addition of section 508.149, which states that "[a]n inmate may not be released to mandatory supervision if a parole panel determines that: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public." Thus, unlike its purely predictive forerunner, Texas's post-September 1, 1996 mandatory supervision scheme is mandatory in large part, but also discretionary in small part.[8]

*Teague v. Quarterman*, 482 F.3d at 775 (emphasis in original) (footnotes omitted).  Notwithstanding this "narrowly limited modicum of discretion," the Fifth Circuit held that

---

[8]   Apparently in reference to this discretionary component of Texas' post-1996 mandatory release scheme, some courts and other authorities have referred to it as "discretionary mandatory supervision (DMS)," which is how it has been referred to in this report.  *See, e.g., Ex Parte Alvarez*, No. WR-77,231-10, 2017 SL 4401597 *1 (Tex. Crim. App. Oct. 4, 2017) (distinguishing between "non-discretionary mandatory supervision (MS)" as to a murder sentence imposed in 1990 and "discretionary mandatory supervision (DMS)" as to a 2011 family-violence sentence) (unpublished).

"Texas' post-September 1, 1996 mandatory supervision scheme creates a constitutional expectancy of early release and, as such, a protected liberty interest in previously earned good-time credits." *Id.* at 776-777; *see also Boss v. Quarterman*, 552 F.3d 425, 427 (5th Cir. 2008) ("Texas' mandatory-supervision scheme creates an 'expectancy of release'; a protected liberty interest that Texas may not deprive an inmate of without the requisite due process") (citing *Teague*, 482 F.3d at 773-77)); *Ex parte Geiken*, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000) (holding that "the language of the [post-1996 mandatory supervision] statute does create a liberty interest in mandatory supervision release"). Petitioner was entitled to due process safeguards in connection with the Board's 2015 decision to deny his release to DMS.

Petitioner's sole due process challenge is that Board's reasons for denying his release to DMS were vague and insufficiently supported. It is true that due process requires that the inmate be informed "in what respects he falls short of qualifying" for release. *See Greenholtz v. Inmates of Bebraska Penal and Correctional Complex*, 442 U.S. 1, 16 (1979).

As the state habeas court noted, "the parole board reviewed [Petitioner] for possible release to discretionary mandatory supervision [in 2015] [but] denied [him] release for four [specific] reasons." (Docket No. 4-8, at 98.) The state habeas court also found that "the parole board properly denied [Petitioner] release." (*Id.*) The Board's reasons included the following (among other things): 1) Petitioner's record indicates a "predisposition to commit criminal acts when released"; 2) Petitioner's "record indicates excessive drug or alcohol involvement"; and 3) Petitioner's record includes "illegal reentry after deportation." (Docket No. 4-8, at 30, 33, 36, 39.)

The reasons cited by the Board are all recognized "denial reasons" from the Parole Board's Directives. Applying federal constitutional law, the Texas Court of Criminal Appeals

has held that such reasons satisfy the due process requirement that an inmate must be informed in what respects he falls short of qualifying for early release. *Ex parte Geiken*, 28 S.W.3d at 560 (citing *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 16 (1979)). The state habeas court here cited *Ex parte Geiken* in concluding that the Board did not err in denying Petitioner's release to DMS. (Docket No. 4-8, at 96-98.) Petitioner has made no attempt to establish that the state habeas court's determination was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

Although Petitioner complains the Board's reasons were ambiguous and vague, the Fifth Circuit has upheld similar explanations in the mandatory supervision context.[9] *See Boss v. Quarterman,* 552 F.3d 425, 427–29 (5th Cir.2008) (holding that the Due Process Clause does not require further explanation than the "paragraphs cut verbatim from the Parole Board's Directives"). To the extent Petitioner contends that the Board was required to recite specific evidence in support of its decision, the Supreme Court has rejected the notion that due process required the Board "to specify the particular 'evidence' in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release." *Greenholtz*, 442 U.S. at 15.

Because Petitioner was afforded all the process that he was due under the United States Constitution, there is no merit to his due process claim challenging the sufficiency of the Board's reasons for denying his release to DMS. Petitioner's final remaining claim should thus be rejected.

---

[9] As another Court in this District has recently explained: "The Board provides adequate notice of the reasons for denial when it—as it did here—simply quotes from the reasons listed in its own directives; due process does not require the Board to specify particular evidence in the inmate's record to support its decision." *Frosch v. Garcia*, C.A. No. 3:17-CV-332, 2017 WL 6622799 *3 (S.D. Tex. Dec. 28, 2017) (citing *Boss*, 552 F.3d at 427-29.).

### III.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment (Docket No. 3) be GRANTED, that Petitioner's § 2254 habeas petition (Docket No. 1) be DENIED, and that this action be DISMISSED.  For the reasons discussed below, it is further recommended that Petitioner be denied a certificate of appealability.

### CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, the recently-amended § 2254 Rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11, RULES GOVERNING SECTION 2254 PROCEEDINGS.  Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); s*ee also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard to a COA determination in the context of a habeas corpus proceeding).  An applicant may also satisfy this standard by showing that "jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329. As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's § 2254 claims should be dismissed on procedural grounds and on their merits. For the reasons explained in this report, the undersigned believes that reasonable jurists would not find debatable the conclusion that Petitioner's attacks on the Board's adverse decisions in his 2013 and 2014 parole denials and the 2014 denial of his release to DMS are time barred, and that the final three claims asserted in this federal habeas petition should be dismissed because he failed to exhaust his state court remedies. In addition, as to Petitioner's Equal Protection and Due Process claims regarding the Board's 2015 denial of release to DMS, the undersigned believes that reasonable jurists would not find the District Court's assessment of the claim debatable or wrong, nor would they conclude that the issue presented is adequate to deserve encouragement to proceed further. Accordingly, Petitioner is not entitled to a COA.

## NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to Petitioner and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on January 16, 2018.

Peter E. Ormsby
United States Magistrate Judge